UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHERYL C.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 1:20-cv-20151
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Sheryl C. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.**     **PROCEDURAL HISTORY**

On November 2, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since October 21, 2017. R. 88, 104, 171–79. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

and upon reconsideration. R. 120–24, 132–34. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 125–26. Administrative Law Judge ("ALJ") Kimberly Varillo held a hearing on November 27, 2019, at which Plaintiff, who was proceeding at the time without the assistance of counsel, testified, as did a vocational expert. R. 39–71. At the hearing, the ALJ confirmed that Plaintiff had previously received written notice of her right to representation and expressly advised Plaintiff of her right to be represented—along with the associated benefits of representation—and the opportunity for a postponement of the hearing in order to obtain representation; Plaintiff nevertheless chose to proceed without the assistance of counsel:

> ALJ: All right, can you raise your right hand? Okay. All right, so just to let you know how I'm going to run the hearing, first, did you receive your notice of hearing with your rights to representation?
>
> CLMT: Yes.
>
> ALJ: Okay, so you do have the right to request one postponement to try to get a representative. What I'll do is I'll explain your rights to you right now, and then you can let me know what you want to do, whether you want to move forward, or whether you would like a postponement for a representative, okay?
>
> CLMT: Okay.
>
> ALJ: So you have the right to be represented by an attorney or a non-attorney. A representative can help you obtain information about your claim, explain medical terms, help protect your rights, and make any requests or give any notice about the proceeding before me. A representative may not charge a fee or receive a fee unless we approve it. If you appoint a representative, you may be responsible for certain expenses such as copying and or obtaining medical records. Some legal services organizations do offer legal services free of charge if you meet their qualifying requirements. We do have a list of such organizations that we can give you today, if you would like a postponement to try to get a representative. You also have the right to proceed today without a representative. If you do so, I will obtain the medical and non-medical records and question you at the hearing. Would you like a postponement to try to obtain a representative?
>
> CLMT. No, I'll proceed.
>
> ALJ: Okay, so what I'm going to is, Kelly, our court reporter, is going to give you a form to sign that's called the waiver of the right to representation. And you're

>   going to sign and date it, and it's just saying that you're waiving the right that I've outlined that you have a right to a postponement for a representative, and you are waiving that right, is that correct?
>
>   CLMT: Yes.

R. 43–44; *see also* R. 164–65 (waiver of representation form signed by Plaintiff).³ The ALJ confirmed that Plaintiff had had an opportunity to review the medical records on the disc. R. 45; *see also* R. 270–81 (containing the cover letter from the Social Security Administration enclosing a CD containing all the evidence to date and instructing Plaintiff that it "is your responsibility to provide medical evidence showing that you have an impairment(s) and how severe it is during the time you allege disability," and to submit medical records and to complete an authorization to release information). The ALJ went on to discuss additional records proffered by Plaintiff, after which Plaintiff confirmed that the record was complete:

>   ALJ: And I understand that you have additional records to give me?
>
>   CLMT: Yes, yes.
>
>   ALJ: With those additional records, would the record now be complete? Or do we need to request additional records?
>
>   CLMT: I believe it'll be complete now.

R. 45. The ALJ received those records into evidence, which were made a part of the record. R. 22 (noting that Plaintiff's proffered records were admitted into the record as Exhibits 14F through 17F), 48–49, 643–55 (Exhibit 14F), 656–77 (Exhibit 15F), 678–91 (Exhibit 16F), 692–96 (Exhibit 17F). Plaintiff also signed a medical release "in case [the ALJ] need[s] to request any additional records." R. 46.

---

³ Although Plaintiff was not represented by counsel at the administrative hearing, Plaintiff's current counsel has represented Plaintiff since December 28, 2020. R. 1–4.

In a decision dated January 15, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 2, 2017, the application date, through the date of that decision. R. 22–34. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 23, 2020. R. 5–10. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 28, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[4] On that same day, the case was reassigned to the undersigned. ECF No. 6. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

4

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

5

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

>scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.    ALJ DECISION AND APPELLATE ISSUES**

Plaintiff was 46 years old on November 2, 2017, the date on which the application was filed. R. 32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 24.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; asthma; chronic obstructive pulmonary disease ("COPD"); emphysema; left knee medial meniscus tear; depressive disorder; panic disorder; and post-traumatic stress disorder ("PTSD"). R. 25.  The ALJ also found that Plaintiff's diagnosed restless leg syndrome and hyperlipidemia were not severe impairments. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 25–27.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 27–32. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a waitress. R. 32.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as an addresser, a stuffer, and a table worker–existed in the national economy and could be performed by Plaintiff. R. 32–34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 2, 2017, the application date, through the date of the decision. R. 34.

Plaintiff disagrees with the ALJ's findings at step four and contends that the ALJ failed to

adequately develop the record in light of Plaintiff's unrepresented state. Plaintiff asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 22; *Plaintiff's Reply Brief*, ECF No. 26. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23.

IV.    **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On March 13, 2018, Lewis Lazarus, Ph.D., conducted a psychological consultative examination of Plaintiff. R. 591–94. Plaintiff reported that she had completed only "part of Eighth Grade" before beginning to work. R. 591. Although she was in regular education classes, she had "some difficulties with respect to learning." *Id.* As for Plaintiff's past psychiatric history, Dr. Lazarus noted:

> The claimant stated after the loss of her newborn, she did see someone at Shore Memorial Hospital but she was never admitted. She stated she did go for outpatient treatment with Psychiatrist, Dr. Gouda, and was prescribed Zoloft. Since the prior evaluation, the claimant noted that she has started at Cape Counseling and sees a nurse practitioner, of [sic] whom she has seen once so far. She stated that is simply too difficult to get transportation to get in for therapy on a regular basis.

R. 592. Dr. Lazarus reported his findings on clinical examination:

> The claimant presented to this examination with a cooperative demeanor. Her manner of relating and social skills were adequate. She appeared generally in accord with her stated age, was appropriately and casually dressed. She was adequately groomed. She utilized no prosthetic devices for vision or hearing, or ambulation. Gait and posture were both normal as was motor behavior. Eye contact was appropriate. Her speech was fluent but raspy. Expressive and receptive language functions were otherwise adequate. Thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. Her affect was depressed and she was quite tearful. The claimant's mood at this time was described as being not good and simply "alright I guess". The claimant was noted to be alert and oriented in all spheres including

> correctly naming the current President of the United States. Recent and remote memory skills were considered to be moderately impaired with respect to recent memory and new learning. For example, the claimant was able to immediately recall 3/3 objects but just 1/3 objects were correctly recalled after a brief 5-10 minute delay. The presentation of a semantic cue did not improve the claimant's recall at all. Attention and concentration during the examination were noted to be limited and marked by decreased pace. The claimant was able to perform counting and simple calculations, and Serial 3s but did so extremely slowly. The claimant was able to correctly repeat just four digits in the same order of presentation and four digits in the reverse condition on a digit span task. *Intellectually, the claimant is estimated to be functioning within the borderline to low average range with a borderline to low average general fund of knowledge which is considered to be consistent with her limited formal education.* Insight was fair, and judgment at this time is considered to be fair to poor secondary to her underlying mood disorder.

R. 592–93 (emphasis added). Dr. Lazarus also noted Plaintiff's activities of daily living as follows:

> In terms of activities of daily living, the claimant reportedly can do many activities of daily living but is limited because of a lack of motivation and desire. She stated she will do things for her daughter. She is independent with dressing, bathing, and grooming, and reportedly can cook and prepare meals if absolutely necessary, can do general cleaning and laundry, shop, and has only limited money to manage. She manages what medications she has and drives. In terms of socialization, she stated she has limited friends and for the most part does not socialize at all. Family relationships are stated as only relating with her mother in terms of her family. Her only interest is her daughter. She stated a typical day is spent getting up, getting her daughter off to school and then she is at home, and oftentimes finds herself just sleeping. She stated she can care for her daughter but does not do very much for her and cannot do very much in terms of other activities because of no financial means to do so. Overall, the examination results are considered to be consistent with the claimant's allegations.

R. 593. Dr. Lazarus diagnosed:

> Major depressive disorder, severe, recurrent, with anxious features, without psychotic features.
> Panic Disorder[.]
> Rule out borderline intellectual functioning.
> Reported history of herniated discs in her neck and back.
> Problems with respect to vocational functioning.
> Problems with respect to limited social support.
> Problems with respect to past marital and other relationships.

*Id*. Dr. Lazarus went on to recommend the following:

11

> The recommendations at this time are for psychiatric consultation to be ongoing for medication management, as well as individual psychological counseling on a regular and consistent basis. The claimant is certainly in need of follow up and also examination of her ability to appropriately manage her household activities and care for her daughter. *The claimant does not appear to be a viable candidate for a vocational assessment and rehabilitation at the present time*. She is able to follow and understand the topic of a conversation but does evidence difficulties in general learning and also in terms of speed of information processing.

*Id*. (emphasis added).

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ failed to fully and fairly develop the record, considering that Plaintiff was proceeding without counsel during the administrative proceedings, including the administrative hearing. *Plaintiff's Brief*, ECF No. 22, pp. 23–31; *Plaintiff's Reply Brief*, ECF No. 26, pp. 1–6. According to Plaintiff, the ALJ erred in failing to obtain more recent records from multiple sources and the ALJ's failure in this regard did not satisfy the ALJ's heightened duty to develop the record given Plaintiff's *pro se* status. *Id*. This Court agrees.

"An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. 'When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)) (cleaned up); *see also Turby v. Barnhart*, 54 F. App'x 118, 122 (3d Cir. 2002) (noting that the ALJ's "duty [to develop the record] is most acute where the claimant is unrepresented"); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (observing that, "when the claimant is unrepresented[,]" there exists a "heightened level of care and the responsibility of the ALJ to assume a more active role"); *cf. Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir.1995) ("ALJs have a duty to develop a full and fair record in social security cases."). However, "[t]he fact that a

12

claimant is unrepresented by counsel and has knowingly waived this right[5] is not alone sufficient for remand." *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) (citations omitted). Where a claimant "knowingly and intelligently waived her right to representation, the burden lies with her to show that the ALJ did not adequately develop the record under her heightened duty to 'scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts.'" *Whetstone o/b/o U.W. v. Berryhill*, No. CV 16-8602, 2017 WL 5047899, at *3 (D.N.J. Nov. 2, 2017) (quoting *Vivaritas*, 264 F. App'x at 157–58) (cleaned up); *Sudler v. Berryhill*, No. 15-729, 2017 WL 1197676, at *10 (D. Del. Mar. 30, 2017) ("ALJs have a duty to develop a full and fair record in social security cases. Accordingly, an *ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. This is so even though the claimant bears the burden to prove his disability*.") (citations omitted) (emphasis added). The Court of Appeals for the Third Circuit does "not prescribe any particular procedures that an ALJ must follow" under such circumstances. *Reefer*, 326 F.3d at 380 (finding the ALJ had a duty to investigate further when he found that the medical records before him did not refer to the claimant's stroke and holding that the ALJ "could have requested additional medical records or held another hearing to receive testimony from [the claimant's] treating physicians about the stroke"); *see also id*. (citing *Miranda v. Sec'y of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975) (finding that an

---

[5] In this case, Plaintiff apparently does not dispute that she knowingly waived her right to counsel. *See Plaintiff's Brief*, ECF No. 22, 2 n.2 (noting that Plaintiff "was advised of her right to postpone the hearing to obtain representation" but she nevertheless "testified at the hearing without the assistance of an attorney or other representative") (citations omitted). Notably, the hearing transcript establishes that the ALJ ensured that Plaintiff knowingly and intelligently waived her right to counsel at the hearing, as discussed above. R. 43–44 (reflecting hearing testimony establishing Plaintiff's waiver), 164–65 (waiver of representation form signed by Plaintiff); *see also Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 (3d Cir. 2008) ("The claimant must be given notice of the right to counsel and can waive this right only by a knowing and intelligent waiver.").

13

ALJ's investigation must be "not wholly inadequate under the circumstances"); *Dobrowolsky*, 606 F.2d at 407–08 (finding, *inter alia*, that "it may be that, with properly developed evidence, [the claimant] comes within one of the per se qualifications for disability under the regulations" and that, in light of certain medical records and hearing testimony, "[a]rguably, *the ALJ should have pursued this possibility by calling for additional evidence*, and if counsel had represented Dobrowolsky this possibility undoubtedly would have been pursued") (emphasis added); *Verbanac v. Kijakazi*, No. CV 20-1506, 2022 WL 395246, at *3–4 (W.D. Pa. Feb. 9, 2022) ("More evidence was needed in this matter to determine the extent of Plaintiff's limitations.") (citations omitted).

Determining the adequacy of an ALJ's development of the record in light of this "heightened level of care[,]" *Dobrowolsky*, 606 F.2d at 407, is decided on a case-by-case basis. *Reefer*, 326 F.3d at 380 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983)); *see also Howard v. Kijakazi*, No. 20-CV-04412, 2021 WL 4893347, at *8 (E.D. Pa. Oct. 20, 2021) ("The adequacy of the ALJ's development of the record varies case-by-case and depends upon the circumstances of the case.") (citing *Reefer*, 326 F.3d at 380) (cleaned up). In the case presently before the Court, Plaintiff contends that, despite having Plaintiff's signed medical release and assuring Plaintiff that she would request additional records "in case we come across something that we may not have," the ALJ failed in her duty to develop the record by failing to request missing records. *Plaintiff's Brief*, ECF No. 22, pp. 24–25 (quoting R. 46) (internal quotation marks omitted); *Plaintiff's Reply Brief*, ECF No. 26, pp. 1–2 (citing R. 46). For example, Plaintiff argues that the ALJ improperly failed to obtain additional records from, *inter alia*, Cape Counseling Services, a treating agency identified by Plaintiff in the disability report submitted in support of her claim. *Plaintiff's Brief*, ECF No. 22, pp. 26–27. Plaintiff

complains that, despite additional and more recent treatment records from Cape Counseling Services than were contained in the administrative record, the ALJ never requested progress notes from this provider. *Id*. Plaintiff insists that the ALJ's failure in this regard worked to Plaintiff's prejudice because those additional records could have corroborated the opinion of Dr. Lazarus, which the ALJ rejected. *Id*. (quoting R. 31).[6]

For her part, the Acting Commissioner argues that the ALJ fully developed the record based in part on Plaintiff's own testimony and because Plaintiff was advised of her right to representation and to request that the hearing be postponed, but nevertheless chose to proceed without a representative or attorney. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23, p. 16. The Acting Commissioner further argues that the ALJ reasonably relied on

---

[6] The ALJ found that Dr. Lazarus's assessment was "not persuasive," reasoning as follows:

> Regarding the mental opinion evidence of record, in March 2018, Dr. Lazarus opined that the claimant did not appear to be a viable candidate for vocational assessment and rehabilitation at the present time. While Dr. Lazarus assessed that the claimant evidenced difficulties in general learning and in terms of speed of information processing, she could follow and understand the topic of conversation (B8F). The undersigned finds the limited assessment of Dr. Lazarus not persuasive, as it was based on a one-time examination of the claimant. Moreover, the claimant reported that she is able to care of her daughter, attend to self-care, prepare and cook meals, drive, shop in stores, handle money, and socialize with family (B1E; B5E; B10E; B8F/3). Moreover, while the claimant complained of memory and concentration deficits, she generally had intact memory, intact judgment, and appropriate affect (B9F/2-5 [R. 596–99, reflecting encounters with her pain specialists dated January 17, 2018, February 14, 2018, and April 9, 2018]; B10F/2-5 [R. 604–07, reflecting encounters with her pain specialists dated January 17, 2018, February 14, 2018, March 14, 2018, and April 9, 2018]; B11F/2-5) [R. 613–16, reflecting encounters with her pain specialists dated January 17, 2018, February 14, 2018, March 14, 2018, and April 9, 2018].

R. 31. Although not cited by the ALJ but related to Plaintiff's ability to perform activities of daily living, Dr. Lazarus opined that Plaintiff "is certainly in need of follow up and also examination of her ability to appropriately manage her household activities and care for her daughter." R. 593.

Plaintiff's representation that the record was complete because Plaintiff "was in a better position to know about what medical records existed." *Id*. (citations omitted). The Acting Commissioner also complains that Plaintiff has failed to proffer the additional documents to which she refers. *Id*. at 16–19. According to the Acting Commissioner, Plaintiff—who is now represented by counsel—could have submitted the documents to the Court, but did not do so "and has therefore waived any such argument." *Id*. at 19 (citations omitted).

In reply, Plaintiff contends that she did not unequivocally confirm at the administrative hearing that the record was complete; she stated only that she believed that the record would be complete once the additional records that she had brought with her to the hearing were added to the administrative record. *Plaintiff's Reply Brief*, ECF No. 26, pp. 1 (citing R. 45). "[I]t was not reasonable for the ALJ to rely on a more general, mistaken belief, expressed by an unrepresented claimant with severe mental impairments." *Id*. at 2–3. Plaintiff also points out that it is the ALJ's duty to assist a *pro se* claimant in developing the administrative record. *Id*. at 3–4 (quoting *Reefer*, 326 F.3d at 380). Plaintiff also points to record evidence establishing the existence of additional evidence, including Plaintiff's testimony and records relating to prescribed medication but without corresponding treatment notes. *Id*. at 4–5 (arguing further that the ALJ owes a duty to develop the record even where the claimant is represented by counsel and citing *Howard*, 2021 WL 4893347, at *8). Plaintiff therefore insists that the ALJ failed to satisfy her heightened duty to develop the record given Plaintiff's *pro se* status. *Id*. 5–6.

Plaintiff's arguments are well taken. As a preliminary matter, the Court is not persuaded that the ALJ reasonably relied on Plaintiff's statement at the hearing that she "believe[d]" the record would be complete with the addition of documents brought by her to the administrative hearing. R. 45. Plaintiff has only an extremely limited education, R. 45, 48–49, 194, 419–20,

16

623, and the ALJ found that Plaintiff suffers from severe mental impairments (depressive disorder, panic disorder, and PTSD) with moderate limitations in the four broad areas of functioning, including the area of understanding, remembering, or applying information and the area of concentrating, persisting, or maintaining pace. R. 25–27. Moreover, the ALJ advised Plaintiff that the ALJ could request additional medical records "in case we come across something that we may not have[.]" R. 45–46. The Third Circuit has held that, when a claimant proceeds without the assistance of counsel, the ALJ must proceed with a "heightened level of care" and must take "a more active role[,]" *Dobrowolsky*, 606 F.2d at 407, and that "the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer*, 326 F.3d at 380 (internal quotation marks and citations omitted). An ALJ does not fulfill this heightened duty by simply relying on the equivocal statement—made by an unrepresented claimant with an eighth-grade education and severe mental impairments—that she "believe[d]" the record was complete. *See id.*; *see also Schmidt v. Colvin*, No. CIV.A. 13-539, 2014 WL 197910, at *13 (W.D. Pa. Jan. 14, 2014) ("The ALJ's failure to fully develop the record in light of Plaintiff s level of education [ninth grade education and no GED] and lack of counsel constitutes administrative unfairness for which a remand is proper."); *Rosa v. Colvin*, 956 F. Supp. 2d 617, 624 n.12 (E.D. Pa. 2013) (citing *Wooten v. Astrue*, No. 11–7592, 2012 WL 6601397, at *3 (E.D. Pa. Dec. 17, 2012) ("The ALJ's duty to develop the record is heightened where a claimant acts pro se. . . . It is even more compelling when the pro se claimant has a mental impairment.")).

      The Court also rejects the Acting Commissioner's contention that Plaintiff's reference to additional records is based on mere speculation. Plaintiff testified at the administrative hearing that she is seen every ten weeks for medication checks and to "check how I'm doing." R. 60; *see*

*also Verbanac*, 2022 WL 395246, at *4 ("It seems such evidence was or could have been made available had the ALJ sought it. . . . Plaintiff also testified that he participated in rehabilitation therapy for his lungs Monday, Wednesday, and Friday. . . .The Court finds this constituted insufficient development of the record."); *cf. Rosa*, 956 F. Supp.2d at 623 ("Since Plaintiff was a pro se claimant, there can be no dispute that the ALJ had a duty to request Plaintiff's psychiatric treatment records[.]"). The fact that pharmacy records before the ALJ reflect prescriptions from a Cape Counseling Services provider in 2019, R. 290–95, also suggests that there exist associated progress notes that were not contained in the administrative record. *See* R. 322–81, 41–78, 621–30. Although Plaintiff stated to Dr. Lazarus in March 2018 that she had seen a nurse practitioner at Cape Counseling Services only once, R. 592, the Court is not persuaded that this statement is dispositive of the ALJ's heightened duty to Plaintiff. *See Dobrowolsky*, 606 F.2d at 407; *Reefer*, 326 F.3d at 380; *Verbanac*, 2022 WL 395246, at *4. The Court also rejects the Acting Commissioner's position that Plaintiff's failure to present the alleged missing records is dispositive of Plaintiff's claim. Instead, the Court concludes that the ALJ, who was on notice of the possibility of additional records, should have taken further action to assure the complete development of the record.

      This Court therefore concludes that remand of the matter for further development of the administrative record is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of additional records from Cape Counseling Services and, if appropriate, from other sources, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r*

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further development of the administrative record, the Court does not consider those claims.

*of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

## V.   CONCLUSION

**WHEREUPON**, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 14, 2023                                *s/Norah McCann King*
                                                                             NORAH McCANN KING
                                                                      UNITED STATES MAGISTRATE JUDGE